IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| MICHELLE S. H.<br><br>           **Plaintiff,**<br><br>v.<br><br>ANDREW SAUL,<br>**Commissioner of Social Security,**<br><br>           **Defendant.** | Action No. 4:20cv54 |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Michelle S. H.'s ("Plaintiff") Complaint, ECF No. 1, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Andrew Saul, the Commissioner of the Social Security Administration ("the Commissioner"), finding Plaintiff was overpaid mother's insurance benefits in the amount of $72,970.00. Plaintiff filed a Motion for Summary Judgment and Memorandum in Support, ECF Nos. 16, 17, and the Commissioner filed a Cross-Motion for Summary Judgment and Memorandum in Support, ECF Nos. 19, 20, which are now ripe for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the

Commissioner's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the Plaintiff's Motion for Summary Judgment, ECF No. 16, be **DENIED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application for mother's insurance benefits under Title II of the Social Security Act on November 17, 2004, following her husband's death. R. at 48.[1] Her application was approved on November 22, 2004, and Plaintiff began receiving benefits that month. R at 53. On June 14, 2016, the Social Security Administration ("SSA") issued a notice informing Plaintiff that she no longer qualified for mother's benefits as of April 2013. R. at 56. On August 17, 2016, the SSA sent Plaintiff a request for repayment of $72,970.00 in overpaid Social Security benefits. R. at 58. On November 12, 2016, Plaintiff filed a Request for Reconsideration, R. at 70, which was denied on March 14, 2017. R at 73. On April 17, 2017, the SSA sent Plaintiff a form entitled "Request for Waiver of Overpayment Recovery" and requested additional information to make a determination as to whether the overpayment should be waived. R. at 97–106. On May 16, 2017, the SSA sent Plaintiff a notice that they had received her request not to collect the overpayment and that they would contact her later regarding this request. R. at 107.

Plaintiff then requested a hearing in front of an administrative law judge ("ALJ"), which was conducted on October 10, 2018. R at 32, 135. Plaintiff appeared at the hearing with representation. R. at 32. At the hearing, the ALJ continued the matter to allow Plaintiff time to try and resolve the waiver issue. R. at 45. Another hearing was held on April 23, 2019, where Plaintiff again appeared with representation and testified. R. at 10, 158. On May 13, 2019, the ALJ issued his decision finding that Plaintiff had been overpaid $72,970.00 in mother's benefits

---

[1] "R." refers to the certified administrative record that was filed under seal on October 27, 2020, ECF No. 10, pursuant to Local Civil Rules 5(B) and 7(C)(1).

2

and remanded the case to the field office for an initial determination of whether the SSA would waive the overpayment. R at 10–12. Plaintiff sought review of the ALJ's decision by the Appeals Council. R. at 173–74. On February 1, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. R. at 1.

Plaintiff filed the instant Complaint for judicial review of the Commissioner's decision on April 10, 2020. ECF No. 1. The Commissioner filed an Answer on October 27, 2020. ECF No. 9. The matter was referred to the undersigned on October 29, 2020. ECF No. 11. Plaintiff filed her Motion for Summary Judgment and Memorandum in Support on January 7, 2021, ECF Nos. 16, 17, and the Commissioner filed a Cross-Motion for Summary Judgment and Memorandum in Support on February 7, 2021. ECF Nos. 19, 20. The matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff filed an application for mother's insurance benefits on November 17, 2004, following the death of her husband. R. at 48. The application stated that "benefits may end if . . . I no longer have in my care the deceased's child . . . under age 16 or disabled who is entitled to benefits." R. at 49. In the application, Plaintiff agreed to promptly notify the SSA and to promptly return any benefit check received if the check was for a month in or after the month in which Plaintiff would no longer be eligible for mother's benefits. *Id.* Plaintiff certified in the application that her reporting responsibilities had been explained to her. *Id.* On November 22, 2004, the SSA sent Plaintiff a notice that her monthly mother's benefits had been approved. R. at 53. The notice reminded Plaintiff that benefits were "based on the information you gave us," and that any change in information could affect her benefits. R. at 54. Additionally, the notice stated that "it is important that you report changes to us right away." *Id.*

On June 14, 2016, the SSA sent Plaintiff notice that she no longer qualified for mother's insurance benefits as of April 2013. R. at 56. On August 8, 2016, the SSA sent Plaintiff a statement informing her that she had been overpaid benefits in the amount of $72,970.00, and that she now owed that amount to the SSA. R. at 58. The SSA sent Plaintiff a notice on November 8, 2016 informing her of actions the SSA could take to collect the overpayment from her. R. at 63–67. The notice informed Plaintiff of two remedies that were available to her. First, within sixty days, Plaintiff could ask the SSA to review and reconsider its finding that she was overpaid $72,970.00 in benefits. R. at 65. Second, Plaintiff could request a waiver of the overpayment through form SSA-632 if (1) she was not at fault for the overpayment, and (2) repaying the amount owed "would mean that [she could not] pay [her] bills for food, clothing, housing, or medical care, or it would be unfair for some other reason." R. at 66. The notice explained that if the SSA did not approve her request for waiver, Plaintiff could schedule a personal conference, after which the SSA would issue a written decision on her waiver request, which Plaintiff would have the right to appeal. *Id.*

On November 12, 2016, the SSA received a Request for Reconsideration from Plaintiff. R. at 70. Several months later, on March 2, 2017, the SSA requested that Plaintiff submit proof of her household income and expenses. R. at 71. On March 10, 2017, the SSA sent Plaintiff a letter indicating that they had received her request not to collect the overpayment and that they would contact her regarding this request. R. at 72. On March 14, 2017, the SSA informed Plaintiff that it was affirming its previous decision to collect the overpayment. R. at 73–75. The decision stated that the issue was whether Plaintiff's benefits should have stopped in April of

2013,[2] and if the amount of the overpayment was accurate. R. at 76. The SSA found that Plaintiff's entitlement to benefits ended in April 2013, when her youngest child turned sixteen. R. at 76–77. The SSA also found that the overpayment amount of $72,970.00 was correct. R. at 77. The SSA informed Plaintiff that her local Social Security office would make a determination on her request for waiver. *Id.*

Following the affirmance of its prior determination, the SSA received a request for a hearing by an ALJ from Plaintiff on April 14, 2017. R. at 89. On the form Plaintiff indicated, "I did not know that I was going to lose my social security benefits when my youngest son turned 16 yrs. old. I never received a letter telling me I was going to lose my benefits, which I did receive letters stating my children would lose their[] benefits, each before they lost them." *Id.* A few days later the SSA acknowledged receipt of Plaintiff's request for reconsideration and requested that she complete the "Request for Waiver of Overpayment Recovery" form and submit proof of her income and expenses. R. at 97. The letter from SSA stated "[i]t 'appears' you may be without fault in causing this overpayment however, we need to determine your financial ability or inability to repay." *Id.* On May 16, 2017, the SSA notified Plaintiff that they had received her request that SSA not collect the overpayment. R. at 107.

At Plaintiff's first hearing on October 10, 2018, the ALJ stated that the only issue before him was whether Plaintiff was overpaid, as the SSA had not yet made a decision on Plaintiff's request for waiver of the overpayment. R. at 40–41. As such, the ALJ stated that that he would remand the case to the local Social Security office for a determination of the waiver issue. R. at 43–44. The ALJ continued the case to give the local office time to make its determination. R. at 45–46.

---

[2] The second paragraph of the SSA's Reconsideration Determination (Form SSA-662) misstates the effective end date of Plaintiff's benefits as October 2004. R. at 76. The first paragraph of the form correctly states April 2013 as the proper end date. *Id.*

5

On October 29, 2018, Plaintiff's attorney wrote a letter to the ALJ advising him that Plaintiff had been under the belief that her benefits were not "mother's" benefits and would continue so long as she did not remarry. R. at 147. Additionally, Plaintiff's attorney stated that Plaintiff "agree[s] that she continued to receive 'some' benefits after her youngest became 16 years of age," but that he had not yet been able to determine whether the SSA had accurately calculated the overpayment. *Id.* In November of 2018, Plaintiff's attorney wrote another letter to the ALJ confirming that "it appears that the amounts that have been paid are accurate." R. at 149. On January 23, 2019, the SSA sent Plaintiff notice that she would have another hearing by the same ALJ on April 23, 2019. R. at 150.

At the second hearing on April 23, 2019, the ALJ reiterated that the only issue before him was the overpayment of benefits. R. at 17. At Plaintiff's request, the ALJ agreed to take evidence regarding her knowledge of the overpayment but stated that he could not make a decision on the issue of waiver because a decision had still not been made by the local SSA office. R. at 18, 25. Plaintiff's attorney stated that she did not contest that she continued to receive benefits after her youngest child turned sixteen. R. at 19–20. Plaintiff testified that a month before her oldest child turned eighteen, she received a notice that he would lose his survivors benefits upon turning eighteen. R. at 23–24. Additionally, a month before her youngest child turned sixteen, she received a notice that he would also lose his benefits upon turning sixteen. *Id.* However, Plaintiff testified that she received no such notice that her mother's benefits would terminate once her youngest child turned sixteen. *Id.* Plaintiff's youngest child turned sixteen on April 2, 2013. R. at 25. Plaintiff testified that, after her husband died, she spoke with a representative of the SSA and that her understanding was that she would receive Social Security benefits up until the point that she remarried, if she ever did. R. at

6

22–23. Plaintiff has not remarried. R. at 23. Plaintiff also testified that she works part time, around ten hours a week, as a personal trainer, and also works part time for her mother's interior decorating business. R. at 21.

At the close of the second hearing, the ALJ stated that he would remand the case to the local SSA office for a determination of whether the SSA would waive the overpayment, since an initial determination of that issue still had not been made. R. at 25. The ALJ informed Plaintiff that if the local office did not waive the overpayment that Plaintiff would have the right to appeal that determination and have the issue heard by an ALJ. *Id.* The ALJ issued his decision on May 13, 2019, R. at 12. Plaintiff then sought review of the ALJ's decision by the Appeals Council, which denied her request for review on February 1, 2020. R. at 1–3. Plaintiff filed the instant Complaint on April 10, 2020. ECF No. 1.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ evaluated Section 404(a)(1)(A) of the Social Security Act ("Act") to determine whether Plaintiff had been overpaid mother's benefits.[3] An overpayment includes a payment in excess of the amount due under Title II of the Act, a payment resulting from the failure to impose deductions or to suspend or reduce benefits, a payment in excess of the amount to which the individual is entitled, a payment resulting from the failure to terminate benefits, or a payment where no amount is payable under the Act. 20 C.F.R. § 404.501(a) (2021). Under the Act, when a claimant has been overpaid old-age, survivors, or disability insurance benefits, the SSA will seek adjustment or recovery of benefits for the difference between the amount paid and the amount to which the claimant was actually entitled. 20 C.F.R. § 404.504 (2021). However, the

---

[3] The ALJ's decision states that he reviewed Section "204(a)(1)(A)" of the Act; however, 42 U.S.C. § 404(a)(1)(A) is the appropriate section that discusses over- and underpayments.

7

SSA may waive repayment of overpaid benefits in certain circumstances. 20 C.F.R. § 404.506 (2021).

The ALJ found that Plaintiff was "overpaid mother's insurance benefits in the amount of $72,970.00 during the period June 2013 through May 2016." R. at 11. The ALJ stated that Plaintiff "is entitled to mother's benefits on a deceased worker's record if she (1) remains unmarried and (2) the worker's minor children remain in her care after the worker's death."[4] *Id.* Entitlement to benefits ends the last month that a child in Plaintiff's care is under age 16. *Id.* (citing 42 U.S.C. §§ 402(g), 402(s)). The ALJ found that, since the deceased worker's youngest child remained in Plaintiff's care and turned sixteen in April of 2013, Plaintiff's eligibility for mother's benefits terminated in April 2013. R. at 11. The ALJ found that the SSA system did not automatically terminate Plaintiff's benefits when her youngest child turned sixteen and Plaintiff did not inform the SSA of this fact, thus Plaintiff continued to receive mother's benefits through May of 2016. *Id.*

The ALJ concluded that Plaintiff was overpaid benefits in the amount of $72,970.00. *Id.* The ALJ found that Plaintiff's argument that the overpayment was not her fault was an implied or informal request for waiver of the overpayment. R. at 11–12. As the SSA field office had not yet made a determination on Plaintiff's request for waiver, the ALJ remanded the case to the field office for further action. R. at 12.

## IV. STANDARD OF REVIEW

---

[4] The full eligibility criteria for mother's benefits are that the claimant must (a) be the widow of the insured, (b) apply for benefits, (c) be unmarried, (d) not be entitled to widow's or old-age benefits that are equal to or larger than the full mother's benefit, and (e) have in her care the insured's child who is entitled to child's benefits and is under sixteen years old or is disabled. 20 C.F.R. § 404.339 (2021). Although the ALJ only directly analyzed two of these five elements, R. at 11, the record supports a finding that Plaintiff met the full eligibility criteria up until the point that her youngest child turned sixteen.

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's decision is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff contends that the Court should remand the case back to the ALJ for an audit of her file which will reveal why the SSA never notified her in 2013 of her ineligibility for benefits, and so the SSA can explain why they waited until 2016 to notify her and to demand repayment. ECF No. 17 at 4. Plaintiff argues that she should not have to repay the overpayment because she was never notified in 2013 that she was no longer eligible to receive mother's benefits and because it would be a hardship to require repayment under the circumstances. *Id.* at 3–4.

9

The Commissioner contends that the only issue that was before the ALJ, and subsequently this Court, is whether Plaintiff was overpaid mother's benefits in the amount of $72,970.00. ECF No. 20 at 7. The Commissioner argues that Plaintiff waived this issue when she failed to address it in her Motion for Summary Judgment, ECF No. 16, although she asserted the issue in her Complaint. ECF No. 1. Further, the Commissioner contends that even if the Court reviews the ALJ's decision on overpayment, his decision should nevertheless be affirmed, as Plaintiff concedes that the ALJ correctly determined that she had been overpaid. ECF No. 20 at 8. Finally, the Commissioner contends that the Court lacks subject-matter jurisdiction to consider Plaintiff's sole argument on appeal, as Plaintiff has not yet received a "final decision . . . after a hearing" from the Commissioner on her request for waiver of overpayment. *Id.* at 9.

### A. The Court lacks subject-matter jurisdiction to consider waiver, and therefore the only issue before the Court is overpayment and the amount thereof.

The Court lacks jurisdiction over Plaintiff's claim that the overpayment should be waived because Plaintiff has not yet obtained a "final decision . . . after a hearing" from the Commissioner on this issue. The Social Security Act allows "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing" to obtain judicial review of such decision. 42 U.S.C. § 405(g). The Supreme Court has stated that 42 U.S.C. § 405(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'" *Califano v. Sanders*, 430 U.S. 99, 108 (1977). Additionally, the Commissioner's decision only becomes final after a claimant has received an initial determination by the SSA, filed for reconsideration, had a hearing before an ALJ, and requested review by the Appeals Council. 20 C.F.R. § 404.900(a) (2021). It is only the Appeals Council

decision or denial of review that may act as a catalyst for Plaintiff to file an action in federal district court seeking judicial review. 20 C.F.R. § 404.981 (2021).

In the matter before the Court, the only "final decision . . . after a hearing" is the ALJ's May 13, 2019 decision. R. at 10–12. The ALJ explicitly stated in his decision that the only issue he could consider was "whether the claimant has been overpaid benefits under section [4]04(a)(1)(A) of the Social Security Act." R. at 10. At the conclusion of both the October 2018 and April 2019 hearings, as well as in his May 2019 decision, the ALJ stated that since the local SSA field office had not yet made a determination on the waiver issue, he would remand the case to the field office for such determination. R. at 12, 25, 46. Instead of waiting for an initial determination to be made, each time Plaintiff prematurely appealed her case, thereby preventing the SSA from determining the waiver issue. Therefore, Plaintiff has not yet obtained a "final decision . . . after a hearing" on the issue of whether the SSA should waive repayment of Plaintiff's overpaid benefits. As such, the Court lacks subject-matter jurisdiction to decide this issue.

Consequently, the only issue that is present before the Court is whether the ALJ's decision that Plaintiff was overpaid mother's benefits in the amount of $72,970.00 is supported by substantial evidence and applied the correct legal standards. The Commissioner argues that Plaintiff has foreclosed consideration of this issue by not raising it in her Motion for Summary Judgment. ECF No. 20 at 7. The Court declines to address this argument, as it is not dispositive. Notably, Plaintiff has conceded numerous times that she was overpaid and has not alleged that the $72,970.00 calculation by the Commissioner was incorrect. R. at 25, 149, 169, 173. As such, there is no dispute between the parties that Plaintiff received overpayment of mother's benefits in the amount of $72,970.00.

Additionally, the record supports the ALJ's finding. Plaintiff stated that her youngest child turned sixteen in April of 2013. R. at 25. This event resulted in Plaintiff's ineligibility for mother's benefits, R. at 91; however, she continued to receive payments until May 2016. R. at 11, 56–57. The SSA notified Plaintiff that she had received $72,970.00 in benefits to which she was not entitled and required her to repay these benefits. R. at 58. Plaintiff concedes that she received benefits to which she was not entitled, *see, e.g.*, R. at 25, 169, and she has not alleged that the Commissioner miscalculated the amount of the overpayment. *See* ECF No. 17.

As a result, the Court **FINDS** that the ALJ's determination that Plaintiff was overpaid $72,970.00 in mother's benefits was supported by substantial evidence and applied the correct legal standards.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Commissioner's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the Plaintiff's Motion for Summary Judgment, ECF No. 16, be **DENIED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within

fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to mail a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
July 8, 2021